316-0248, Estate of Deborah Beetler. David Beetler, Appellant by Daniel O'Dea v. Tricia Bledsoe, F.D.A. I'm here for the Appellant David Beetler. The case at a very superficial level seems to be over whether his wife should receive a dental procedure, the ability to have dentures. She weighed more before than she does now. When you do that your mouth becomes smaller and the dentures that once fit don't fit anymore. Mr. Beetler would like to have dentures for his wife. A dentist came in and testified that the procedure is possible. If there is any problem with it in the middle of it, the dentist would just stop doing the procedure. The reason that he has for wanting this procedure done is for cosmetic reasons for his wife and also that she might be able to eat solid food. The brief indicated that she was at end stage dementia and she was in hospice care. Is she still with us? Oh yes. In fact she takes walks with Mr. Beetler outside the facility as the record shows. In the record for example it did say that the nurse who purported to testify about dental matters said that she shouldn't leave the facility to go get a procedure like this. My client testified that he takes her on walks all the time outside the facility. It may seem superficially to be something over some teeth, but it's really a bigger issue in our opinion. Obviously Mr. Beetler isn't pursuing it this far because he thinks that's all that's involved. The court originally, when the court appointed Ms. Bledsoe as the guardian, found that my client has an extreme amount of devotion to his wife. In fact that court decided that he thought that it might in some ways blind him to what needed to be done for his wife. That's why the court said that it would enter in order that Ms. Bledsoe would be a guardian appointed with the ability to put her in some kind of care facility. It didn't say anything about the medical care decisions that that plenary guardian would decide. There was some letters of office that were issued. How can you place a person in a residential facility if you don't have plenary guardianship over the person? That's all I'm saying is that the order of guardianship allowed that guardian to place her in the facility, but said nothing about who would make the medical decisions and the other matters that were in the health care power of attorney. The temporary order appointing the temporary guardian superseded all other powers of attorney. Yes. And your client didn't challenge that when the guardianship arose? It provided that. In fact, that's one of our arguments that the temporary order did say that the guardian, the temporary guardian, would exercise the powers that were in the power of attorney and that the power of attorney would not be operative. However, when the final order was entered, that was not in there. And, in fact, it's telling that it wasn't in there. Once you supersede a prior power of attorney, it just ceases to exist. I mean, your client didn't challenge the plenary guardianship over both person and estate in 2014. That was a temporary order, and there was then a hearing on the final order, and in the final order, that was not found, that the power of attorney would be obviated or any words to that effect. Once you snuff out a flame, you know, you've got to reignite it again before you can snuff it out a second time. It wasn't an interview meaning power of attorney executed by Mrs. Buechler. The court expunged it. It expired. It ceased to exist. Once the temporary guardianship order was issued. Well, I don't think it's in the nature of, like, a springing use or anything like that. I think that there's a temporary order entered, and the temporary order says what the temporary order is going to do. The temporary order said that the guardian could exercise all of these medical decision-making tasks that were in the power of attorney and specifically said that the power of attorney would not control. Then when the final order was entered, nothing like that was said. And it's hard to do. It said letters of guardianship, wasn't it? Letters of, well, the letters of guardianship are another thing in this case because. You probably didn't challenge those as well. But Maynard didn't even have access to them. Certainly the attorney for Mr. Buechler had access to the order that was entered and signed off on that. But there's no evidence that he was, that that attorney was given access to the letters. Two years after the plenary order of guardianship over both the person and the estate was signed, in those two years between then and now, did your client attempt to make any other medical decisions or decisions regarding her care, physical care of her person? Yes, I think he did. I think he was there every day, I would call it advocating for her, every other day at the home, and ran into a stumbling block only when it came to this dental procedure. That he wouldn't have done. I'm just trying to figure, does it make any sense to have somebody who's got a plenary guardianship over this person and then somebody else over here with a health care power of attorney? How does that work? Well, I think that the legislature has made that decision because the legislature has said that the entry of a guardianship does not obviate a power of attorney unless the order specifically says that. And so the legislature has made a judgment that the power of attorney will continue. In fact, on page two of our initial brief, we cite those kinds of sections that you find in statutes that nobody reads very often because you usually get to the meat of it. But the beginning sections of the Illinois Power of Attorney Act, section 2-1, says that the power of attorney applies during periods of disability. Section 2-5, it will apply notwithstanding lapse of time, the principal's disability or incapacity or appointment of a guardian, and so on. And so the legislature has a scheme here, a legislative scheme, whereby a power of attorney will continue to control or point to who makes the medical decisions unless the order appointing the guardian says otherwise. At the same time, you had a motion to allow these dental services, right? And the trial court denied that motion. And so here he's telling somebody who's got the health care power of attorney who ought to be able to make those decisions, no, you're not doing it. And that's the guardian. And that's where we think the trial court went wrong because, first of all, we think the trial court, in applying a best interest standard, erred. When the court, I'm sorry. Well, I'm just saying it isn't implicit. You know, what the trial court did was say that this health care power of attorney is gone. In the first instance, the first judge? You know, he's kind of explaining what he's meant, but it seems inconsistent to say, yeah, you're a health care power of attorney, but you don't get to make a decision about her health care. I think the trial court, in this circumstance that's on appeal right now, did find that the earlier order obviated somehow the power of attorney. Let me ask you this. But there was no. At the end of the day, where's this going to go? Because we sent it back. What do you think the trial court's going to do? My guess is the trial court's going to enter a new order that says, so everybody can understand, this guardianship supersedes the health care power of attorney. Well, what I hope the trial court would be instructed is that the decision-making on whether to have a procedure like this doesn't belong to the court. It belongs to the power of attorney, and that when it comes to what the statute says, that's who has the power to say whether a medical procedure should take place, and the legislature has put a safety valve in there. They've said that if there will be harm to the person, then the court can intervene. But otherwise, I don't think the court's supposed to intervene. Harm or not in their interest, right? Isn't there a disjunctive thing there, not in their best interest or not acting for the benefit of the principal or that the agent's action threatens substantial harm. So not acting for the benefit of the principal is a different thing than saying, finding it will cause harm, and those phrases are really disjunctive in the statute, aren't they? Well, yes, but I think that the phraseology about acting for the benefit of the principal refers to what the power of attorney is trying to accomplish, and here I never thought there was any doubt that he was trying to work for her benefit, the power of attorney. Well, I don't think it's so much his state of mind as it is what's the effect  Well, I don't think that we're quite as free to interpret it that way because it goes on to say in accordance with the terms of the agency, and so if you're acting in accordance with the terms of the power of attorney and you have no intention of violating fiduciary duty and you're not violating the fiduciary duty that this power of attorney says that you have, then that doesn't constitute not acting for the benefit of the principal. It doesn't establish a standard of best interests or anything like that. It actually talks about preserving the terms of the power of attorney in that circumstance. So I think that the legislature has said that the power of attorney will make the decisions unless the power of attorney is acting outside the scope of the power of attorney or the power of attorney is causing substantial harm, and here we have a dentist testify that the procedure is within the realm of dental science, said that if there's a problem in the middle of the procedure, the dentist can stop it, said that this happens to older people, that their mouths get smaller. Isn't the issue, though, what the statute says? Isn't that what it boils down to? It's not that he cares less than she does or she cares more. It does boil down to what the statute says, and the statute doesn't have a best interest standard in it. No, no, no. But what about Mrs. Bledsoe going back? If we decide for you, if we decide in your favor, what prevents Mrs. Bledsoe from going back to the trial? I don't think anything would prevent her from trying to claim that she had some basis to have the power of attorney eradicated, essentially. In fact, I think that actually in the Doyle case, which seems to be an important case in this circumstance, that there was a move to do away with the power of attorney. This is beginning at page 299. And so the point is, though, I guess, is that she never asked that the power of attorney be obviated except during the temporary order period in the first proceeding. And the court in the first proceeding never said anything about, in the final order, in the words of the statute or otherwise, that the power of attorney would be regarded as null and void or nullified in some manner. And I agree that in the letters of office, the letters of guardianship, there's phraseology in there that would give Mrs. Bledsoe the ability to make medical decisions. But even in those letters of office, which are not a court order, there's nothing in there to keep him from making the same kinds of decisions. She's enabled to do so, but it never says she has the exclusive right to do so. So in the Doyle case, which has been cited by both sides, the court entered an order where an implicit overriding of the power of attorney was found. The court's order listed the same criteria as the power of attorney for what the guardianship would do. And there they found an implicit overriding of the power of attorney. Here we don't have that. We don't have a match between what the order says in the second proceeding, the permanent order, and the power of attorney. Nor do we have a match even between the letters of office and the power of attorney. But it's our view that that's not a court order anyway, and it doesn't meet the standards for what would be a court order under the statute. And I think under the appellate court's precedence that a clerk's actions, a circuit clerk's actions, are not a court order. And so we believe that the court erred below in finding that the first proceeding resulted in an obviation of the power of attorney, and that under the statute the power of attorney was no longer in full force and effect. We think it was. We think that the legislature has made the decision that the power of attorney controls. We can disagree with that. We can say, well, why would you do that if somebody needs a guardianship? But they have said time and time again in the applicable statute, you just go through every section and they're saying the power of attorney lasts through a disability and it lasts even past the appointment of a guardian. So we would ask you to simply say, simply rule, that the power of attorney, unless it's somehow found to be null or void, that it controls unless the court specifies otherwise. And here that first order didn't do it. And the court below here erred in thinking that they did. So your position is if the language in the temporary order was in the plenary order, then you wouldn't have a right to stand on here? I would say that. I would say that. So if I understand your argument correctly, then are you arguing that a plenary guardianship can, over a person, can coexist with the power of attorney when the person the court appoints is different than the person the individual appointed to make the medical decisions? Exactly. And that's what the legislature said. We think that, as in this case, the court can give a guardian the authority to place somebody in a facility so she's not living at home anymore, but also leave the power of attorney intact in medical decisions being made by the power of attorney, who was Mrs. Buechler's choice to have him, not her daughter, be making the medical decisions. And you don't think you forfeited the issue by failing to challenge the plenary guardianship over the person? Because I have concerns that they can't coexist. Well, if I was writing legislation, I would ask that question. But given that the Illinois legislature has said they can exist, and what you have to do to make the power of attorney not operative about the findings that have to be made in an order. Yeah, the court has to find that the person with the power of attorney is not acting in the best interest. I disagree with that. I don't think it's the best. To distinguish the power of attorney. Oh, yes, yes, right. And so I think that when we do temporary orders in circuit courts, our thinking is a lot different, like maintaining status quo, making sure that something's not done. Maybe you don't want somebody using their power of attorney while the case goes on. Temporary restraining orders are a lot different than permanent injunctions. So we make a big distinction between the temporary order and the final order. And, in fact, we think it's telling that the final order didn't simply repeat what the temporary order said. The temporary order showed that the court knew that it had the power to do that if it wanted to, and it chose not to in the permanent. There is a public policy argument in support of your position, and that is I prefer to designate who I would like to act in my best interest. And me, too. And this is a husband-daughter situation? Yes. Okay. Thank you. Thank you, Mr. O'Day. Mr. Robertson. May it please the Court, Mr. O'Day. I've prepared an argument. I'll set it aside for a moment. Because Mr. O'Day said it very well, this was originally filed as a petition about dentures. It was not filed as a petition to set aside the guardianship. That was incidental. I candidly don't attribute bad motives to anybody about this because it is true. There was some working together over these prior two years. So there's no villain in this story. There is, however, a lot of misconceptions. When I didn't try the case, I didn't write the brief. I did file a motion to add some things to the statement of facts, which I think are very important, and which was denied. My secretary called me and advised me of that fact. And the only thing that's in those statement of facts is all of the testimony at the trial about what the dentures order would not do for this woman. You're not going to discuss those facts because your motion to add the statement of facts was denied. No, I'm going to argue them anyway for this reason, Judge. Mr. O'Day has just argued them. Mr. O'Day says the dentist testified to certain things. He did not. On cross-examination, the dentist conceded a number of things. The registered nurse testified. That's part of the record. What Mr. Beatler said was that 15 years ago his wife wanted to have dentures and he thought they would help her eat solid food. But the record, and this is in our brief, the doctor's orders were that she'd be on a liquid diet because she's in advanced dementia. She cannot communicate verbally. She can't communicate pain. She can't cooperate. She can't comply. And it was the opinion of the nurse and the daughter that if she has to sit in a dentist chair, it's going to be extremely traumatic for this woman. So I don't know how on the record I understand the doctrine of forfeiture in arguments and briefs. But on the record, that is the evidence that was presented. The reason that was the evidence was presented is because that's the petition that Mr. O'Day filed in the trial court. And if his position was that his client is in control of medical decisions, that should have been what he filed. But instead, he filed a petition with a dental report attached, which he cites as though that was the testimony of the dentist when, in fact, on cross-examination, the dentist admitted that he did not check the medical records, he did not consult with the medical staff, and he was not aware of the risk of aspiration and the fact that the patient was noncommunicative as to pain. So you can affirm on any basis in the record whether it's argued or not. It's now been argued, and I understand that it wasn't in the brief. Now, let's get back to the first issue. The first issue is what's the effect of the 2014 order? I think that's been well discussed. The only comment I have with regard to that is this. For two years, that order was not appealed, was not contested, was not in any way controverted until the indenture issue arose. If this is simply a question of who had the power, it's kind of being portrayed as a power struggle between the daughter who's the guardian and the husband, the stepfather. And I think that's really unfair to all the parties here because for two years, this situation worked. The dentures are what gave rise to the situation, and so the words of Judge Kavanaugh, I think, because he carefully reviewed what happened in the prior proceeding two years earlier with Judge Standard, and he said, and I quote, Judge Standard has already decided this, meaning the issue of who has the power. But I'm going to take it one step further. I'm going to call your attention to the Act because if you look at the Act, that's what this was filed under is the Power of Attorney Act. And the Power of Attorney Act does not say the power of attorney has the absolute power. The Power of Attorney Act in subsection A allows any interest in person to file a petition. And the petition in this case was filed by Mr. Biedler, and Mr. Biedler filed a petition that said my wife needs these dentures and here's a dental report. Now, he has invoked the jurisdiction of the court to look at the dental procedure. He has done that. And if you look at subparagraph B, it says if the court finds that the agent is not acting for the benefit of the principal in accordance with the terms of the agency, everybody ignores that, in accordance with the terms of the agency. If you go to counsel's brief, you'll find that Mrs. Biedler, in accordance with the terms of the agency, wanted her agent to consider relief of suffering, expensive, quality, as well as extension of her life. The evidence in this case is that she needs a parade diet. She can't handle solid food. She hasn't had dentures for two years. She will undergo suffering, both psychological and physical, if she has to go through this. And if infections develop or problems or complications arise, she can't verbally communicate that to anyone. So that brings in the second part of that, or substantial harm is threatened to the principal's person in a manner not authorized by her. I'm sorry. The victim here is not Mr. Biedler. The victim here is not his daughter. The person you should be concerned with in your consideration is Mrs. Biedler, who has advanced Alzheimer's and is going through an end-of-life procedure. It is tragic. But let's not make it worse. Now, how did the trial court possibly fail to make the requisite findings? Well, if you read the transcript, you'll find out that's because neither attorney pointed the judge to the right language. Under what Mr. Long argued on behalf of the daughter, it had already been decided two years earlier after an extensive procedure, and that's fine, so it's consistent that we just look at best interest and the court decides it that way. Under Mr. O'Day's argument, the court has to make some finding of substantial harm. Well, if the judge had been pointed in that direction, you'd have that finding. Instead, what you have is the judge saying, I'm bound by the prior decision. Oh, by the way, it's in her best interest. But if you remanded this to the trial judge on the same evidence and you asked, given the evidence in the case, is having a denture going to be a good thing for her? The short answer is no. The last thing is the challenge I find very interesting about the nurse's testimony, because the nurse did not offer a dental opinion. In a sense, she didn't even offer a medical opinion. She offered a nursing opinion. And if you go, the objection only says she's offering a dental opinion. Well, in point of fact, nurses are not uneducated, untrained people who simply do nothing and do whatever the doctor tells them. The doctor's orders were parade diet, nursing home, hospice care. Those are the doctor's orders. It was the doctors at St. John's Hospital two years earlier that had taken her teeth away. And the nursing testimony from someone who works years, and for one year with this patient, as a hospice nurse was, if she has the procedure, candidly, it may kill her. She may aspirate. She may choke. She can't eat. It doesn't help her with her diet. Her husband's intentions may be very good. I have no doubt about that. And by the way, him taking her out of the premises, he never took her out of the premises for a dental or medical procedure. And if you look at the testimony carefully, he took her to the parking lot. So, all things considered, the trial judge should be affirmed. He should be affirmed because of the prior order. He should be affirmed because as this matter was brought to him, he followed the act. The testimony was offered. The testimony is unclear, or excuse me, is totally clear. In fact, it's uncontroverted that she will get no benefit from this procedure and face substantial risk. And for that reason, we would respectfully ask that you affirm. Are there any questions? Thank you. Thank you, Mr. Robertson. Mr. O'Day. How old is your client? I'm not your client. Your client is employed. How old is she? Eighty-one. How old is Mrs. Gateway? Sixty-seven. Sixty-seven. Sixty-seven. Sixty-seven. Yeah. She, I think there is a controversy in the record about this procedure, because the nurse testified that the dental procedure would be potentially a traumatic experience. But the doctor said that if there's any trouble during the middle of the procedure, that he would just stop. Let me add that the doctor, was the doctor familiar with Mrs. Gateway? He went to see her. Yeah. He went to go see her and examine her before he rendered his opinion in the affidavit that we attached to our complaint. And our complaint is in the appendix to our brief at A20, and paragraph one talks about my client being the power of attorney for health care. Paragraph two cites the Probate Act that until there's a court order saying that the power of attorney is somehow obviated, that the power of attorney controls, et cetera, it wasn't just about teeth. It was about who gets to make the call on this when the petition was filed. The public policy was invoked. It was that she had chosen to have Mr. Bietler make the decisions, and that's what he wanted to do on this issue. In terms of the quality of her life, he should decide what would improve the quality of her life. Does cosmetic improve it? Does being able to eat solid food improve it? Or at least have a chance maybe to eat solid food. I would hope that my power of attorney would let me have a chance to eat solid food, and then if that didn't work out, then maybe I'd still be stuck with the puree. Well, was there a testimony that the danger with solid food could also include aspiration and death? I think that's what the nurse was trying to say. She was weighing forth, in my opinion, a method that would make the nursing the absolute easiest possible for this person. Pureed foods, not having a procedure, staying in the nursing home itself and not leaving, et cetera. I guess some people can think that's quality of life. But he should make the decision about what's quality of life. And so that's the point of your position. So you're not arguing that the judge's ruling was against the manifest way of the evidence. You're saying as a matter of law, the client had the right to have whatever medical procedure he wanted. I'm saying it's a de novo standard for his decision because he should have decided that the power of attorney gets to decide. Well, let me ask you this. If somebody with a health care power of attorney decides that they're going to take their guardian, what's the term I'm looking for, the principal, and have a procedure done, normally that person with a health care power of attorney just takes them to the dentist or the doctor and has it done. Hey, doc, dentist, whoever, I've got the power of attorney, do procedure A. Right? Well, close enough. I think usually the power of attorney only gets a say so when the person's sitting there and unconscious and they're making decisions for them. I mean, that's the point of the power of attorney, isn't it? So you have to go to court every time to get something done. Yeah, I think the point is that somebody's unconscious, they're disabled, whatever. Somebody has already preselected them to make the medical decisions. So why do you file a petition to do this if you thought the law was such that you just take it to the dentist and have it done? Because there was a controversy with the guardian about whether to do it. So my client went and had the dentist come in and look at her. The dentist told him and signed an affidavit that he could do the procedure. He testified at the trial, yeah, there are things wrong that could go wrong during a medical or a dental procedure, but if they go wrong, I'll stop. There's the possibility that she'll be able to eat solid food at the end of this. And he gave the reasons why her mouth had gotten smaller and why she needed or could have this procedure. So there was nothing, there was a dispute, and my client thought he had his wife's interest in mind, and he chose to have the procedure done. And he chose, since she had control over where the body was, that the body was at the nursing home, that's the only power she got in the order of her guardianship, that he should file this where there's a dispute between the two. Rather than just take her to the parking lot, which he could do, and hustle her off to a dentist somewhere. Question for you. The person that actually filed the petition for guardianship long ago is Barbara Foster. She works for Alternative for Older Adults. Yes. Is that the nursing home, or is that just an independent agency? That's sort of Alzheimer's advocacy group. And they're not involved at all anymore, but they were involved back then. They were. Initially, because it's anybody who can file the petition for guardianship. Yes. So they filed the petition and nominated Ms. Bledsoe. Right, right. They did not nominate the husband. Yes, and I think that was when this whole business for the temporary order got started, about not honoring the power of attorney, which then was not placed in the permanent order. Gentlemen, could you, you know, I had a respected judicial colleague that used to say, is our work interrupting your conversation? This attorney only gets one chance to argue in front of us, and please take your conversation outside if you'd be, I apologize. So, you know, the reason why we think this is a de novo standard rather than manifest weight of the evidence, we think that it's a matter of law that the power of attorney in this case, because there's no order within the meaning of the Probate Act or the Power of Attorney Act, that takes it away. That the power of attorney at least is presumed to have the authority to act here and to make the decision, and, you know, she could have chose. Her daughter is her power of attorney, but she didn't. She chose her husband to be her power of attorney. Just like most of us, if we have a spouse, choose our spouses. And the daughter is still the plenary, has control of the purse strings. Yes. Nobody's contested that. That's right. Thank you. All right. Thank you very much, Mr. O'Donnell. Thank you both for being out here today. Your Honor, one point of clarification. Just so the record's clear, I think the court does need to look at the evidence presented. I don't know. I'm going to have to do a short recess to finish. All right. We're beyond recess.